So, Ms. Schneider, I see that you've reserved two minutes for rebuttals, so I'm going to give you eight out of the gate. You may proceed. Ms. Schneider Thank you. My name is Tina Schneider. I'm here on behalf of the defendant, Basilio Hernandez, who is convicted of drug conspiracy. I'd like to concentrate on the Fourth Amendment issue we raised in our brief. After striking inaccurate information and evidence illegally obtained from the search warrant affidavit, the district court found that the warrant was not supported by probable cause. However, the court ruled that the evidence, the drugs found in my client's car, could come in because the good faith exception applied. First, I'd like to address the standard of review. It's clear that if it's a question of fact, it's clear error review. A question of law is de novo review. A district court's decision to apply the good faith exception is a question of law, subject to de novo review, and the government and I disagree on this. More specifically, a district court's assessment of whether the officer's misstatements and omissions in the affidavit were made recklessly or with gross negligence or deliberately, that's a question of law. The government cites one case in its brief that specifically says, a 2003 case, Awadallah. That case holds whether a person acted deliberately or recklessly is a factual question. However, a case subsequent to that, Raimonda, a 2015 case, this court held that it reviews de novos, the district court's conclusion that the officer was grossly negligent. Judge Chin had this- So we accept the findings of fact? Yes, absolutely. There were two bases for the district court's determination that the good faith exception applied. First, the court found that the officers reasonably relied on binding appellate precedent. This search was conducted before Collins was decided. Collins was the case that said the curtilage principle of the sanctity of curtilage trumped the automobile exception to the warrant requirement. And it's true that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule. The government, by the way, doesn't address this at all in its brief, and we think as a result it's abandoned. But in any event, at the time of this search, there was no binding appellate precedent allowing officers to go onto the curtilage to search the motor vehicle. But isn't that kind of backwards? There's no binding precedent allowing, or there is no binding precedent prohibiting? There was no binding precedent either way. And the case law from this circuit states that there has to be, to rely on this, there has to be binding appellate precedent at the time allowing the conduct. But even without that, if we set that aside, even before Collins held that the automobile exception was not applicable to the curtilage, you still have to have probable cause to search a car. The automobile exception does not say you don't need probable cause. The automobile exception says you don't need a warrant if you have probable cause. The police actions here, walking up the driveway, removing the tarp from the car to see the van, the dog sniff of the trunk, were all illegal even before Collins because the officers didn't have probable cause to search. And how do we know that? The district court found that without that conduct, there was no probable cause to search. Secondly, the district court's conclusion that the many misstatements and omissions in the officer's affidavit were only mere negligence or innocent mistake cannot stand. First off, it's unclear whether the court applied the correct legal standard. It repeatedly stated in its decision that the good faith exception applied because there was no evidence of deliberate deception. But you don't need evidence of deliberate- The court several times mentioned gross negligence. I guess you're saying that because if the court doesn't use the full list every time, we should presume a misunderstanding? No, I'm saying because the court seemed to suggest that it understood the rule to be if there's no deliberate deception, the good faith exception applies, that this court should be troubled by that. All right, but the district court said there's no evidence to show that the conduct here rose to a level to constitute deliberate or grossly negligent behavior. That's correct, Your Honor. But even if the inaccuracies were simply negligent, which we don't believe they were, how can an officer who is negligent then be found to have reasonably relied on the resulting warrant? The good faith exception can apply where the officer who misled the magistrate, purposefully or not, is the same officer who executed the warrant. Here, Officer Burganti was both the affiant and the officer who searched the vehicle once the warrant issued. And the Supreme Court cases discussing the good faith exception have never applied at where an officer was negligent and that negligence directly led to the violation of the defendant's constitutional rights. The good faith exception has always been applied where the negligence was more attenuated from the illegal search. So, for example, in Herring, it was a police record-keeping error. In Leon, it was a magistrate error. In Krell, the police relied on a statute that was later found unconstitutional. In Evans, the police relied on mistaken information in a court database. In any event, the record here shows this was not isolated negligence. There were a number of misstatements, inaccuracies, omissions that were both numerous and significant. And we ask that this court find that the good faith exception is not applicable in this situation and the evidence should not have come in. All right.  Thank you, Ms. Schneider. You've reserved two minutes for rebuttal, so we'll hear from you again. But for now, we'll hear from Mr. Eldridge. Good morning, your honors, and may it please the court. My name is Sean Eldridge. I'm an assistant United States attorney in the Western District of New York. I represent the government on this appeal, and I was one of the lawyers who tried the case below, although I came into it after the suppression hearings were concluded. After a Franks hearing where the affiant, Officer Briganti, testified, the district court did not clearly err in its factual finding that that affiant, Officer Briganti, was merely negligent in drafting the warrant application and as a result, under Franks, finding that suppression was not warranted. I want to talk a little bit about the standard of review my friend brought up. We agree, I think, maybe more than we thought we did. I mean, in terms of Franks, that's really the focus here. The district court filings were all about having a Franks hearing. The defendant's post submissions referred to the Franks standard. That's what was really going on here. The defendant's claim was that Officer Briganti falsely or recklessly provided information to the issuing magistrate judge, or state court judge, excuse me. So the focus of the hearing was on that question. What was the subjective intent of the officer when he made these statements? Now, no doubt, there are statements that could have been in that warrant better. There are things that could have been done differently. We acknowledge that before the district court. That's not in dispute. There were actual inaccuracies in the warrant. There are, Judge. As well as omissions. I agree, Judge. In terms of the inaccuracies, though, many of them, I would submit, are not material. Whether or not the confidential informant spoke to one officer or two officers, or Officer A instead of Officer B, I would submit is not material to the court's consideration of what the information that was brought forth was. Right, but inaccuracies such as the idea that the informant gave them the VIN number of the car, that seems, I would think that's more significant, isn't it? Judge, I will acknowledge that that sentence is poorly written because it does not explicitly say that the informant provided that information. I will grant you it is a fair reading. But the court said someone reading that would interpret that to be saying that the informant gave them this very specific information about the car. Judge Lee, I do not disagree that it is a fair reading to say, especially a magistrate reviewing this quickly, as we know happens, to say it probably came from the confidential informant. But even removing that information, what we are left with is this confidential informant who described preparing drugs and putting them into the car, which at least based on the information we know came from the confidential informant, is in this white BMW parked at a location, which Officer Briganti testifies how they get from 41 to 35 and three houses down and the steps they take to corroborate that. So, yes, we agree that the VIN number should be excised. Well, the VIN number, it wasn't clear to me that the VIN number is really part of the probable cause analysis. The VIN is really just, frankly, to identify the location to be searched so that they're not searching some other white car. But it's not part of the probable cause. I agree. You're right, Judge. I'm just acknowledging, in response to Judge Lee's question, that there are some statements in there that could have been done better and we acknowledge were incorrect or at least it is a fair read to say that that sounds like they may have come from the informant when they did not. And that's how we got to Franks in the first place. That's why we had a hearing. This court knows oftentimes defendants might not necessarily be able to make the threshold showing to get a hearing. We had that hearing here. There's no, you know, we don't have to guess as to what Officer Briganti's intent was. The district court heard his testimony. The district court got to size him up, listen to cross-examination, and make that factual determination that those misstatements were negligent. And there's nothing in the record to support any finding of willfulness or gross negligence. I mean, I think the magistrate judge uses the term negligence over and over and over. 128, 131, 134, 140, et cetera. Can I ask you? No, no. Please, Your Honor. I don't know if this is what you're returning to or not. But about Collins, which is not really discussed in your brief, my read of Collins is the court seems to go out of its way to suggest that the Supreme Court, that it's not creating a new rule in Collins, that, in fact, there was nothing in the court's prior case law to suggest that the automobile exception would apply to curtail this, that that overrules that. If that's, I mean, I guess first I'll ask you if that's your read of Collins, but even if it's not, doesn't that suggest that that's a problem here, that this search was illegal, as a result of Collins? Thank you, Judge Lee. I was going to talk about the binding appellate precedent prong next. So I think the way it is stated in the brief is correct, which is that the district court found at the time the warrant was issued that the actions taken were not considered illegal. And that's entirely correct, I would submit. And maybe that's a better way of saying it. So why is that correct? Why is it prior to Collins that it's, you know, the rules about curtilage and what's required for search, why prior to Collins would it be reasonable to think, yes, I can go on to the curtilage of this home and search this car? A couple of reasons, Your Honor. Number one, putting aside the fact, I think the fact that the Supreme Court had to take up that issue. What is the intersection between curtilage and the automobile exception to resolve it, I think speaks to the lack of clarity in the law at that time. But beyond that, Collins itself on remand is really interesting what happens. The quick version is it goes back down from the Supreme Court to the lower court, and that court went through a lengthy discussion of the state of the pre-Collins law, found that the officers there acted in good faith by removing the tarp from the motorcycle and found, quote, no precedent until the United States Supreme Court's ruling in this case expressly disclaimed the view that Schur, which is a 1938, I believe, Supreme Court case, had applied the automobile exception to a vehicle parked within the curtilage of the home. And that's exactly what happened in Schur. Schur is a case where the long and the short is a confidential informant observed a car, or excuse me, provided information that a car would be transporting liquor. The officers followed it. The driver turned into the garage that was a few feet back in the residence and within the curtilage, and ultimately the officers searched the car. But that wasn't the home of the, well, I guess I should ask since I'm not familiar with the facts of the case. But that wasn't, was the individual driving that car turning into the curtilage of their own, of, like, I think. Was this a car just turning over, you know. Sure. A car is being pursued and the car just happens to turn into a driveway. That seems different to me than a car parked at a home. Certainly, Judge Lee. I don't recall if it was Schur's property or not. But, I mean, it definitely was the garage on the residence. But we can go beyond that. Because I think the Supreme Court tried to at least clarify, or I would submit emphatically said in LeBron, which is Pennsylvania v. LeBron, a 1996 Supreme Court case, that, quote, if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more. And that was the point in LeBron. As I recall, the lower courts, the Pennsylvania state courts, had essentially opined that the automobile exception only applied when there was almost kind of a plus factor. That you needed some other type of exigency or something else. And just having an automobile and probable cause standing alone was not enough. And the Supreme Court, in a pretty short opinion, very emphatically said, no. The automobile exception applies without more when you have a readily movable car. And if you look for cases pre-Collins addressing this intersection of the Holmes curtilage and the application of the automobile exception, you won't find a lot. There's definitely no case from this circuit of the Supreme Court that I'm aware of saying what Collins ultimately held. That when you have this convergence, essentially I read Collins to say, curtilage wins over the automobile exception. And there is no case in this circuit or in the Supreme Court prior to Collins saying that. So I think the district court's assessment that at the time the warrant was issued, that those actions were not considered illegal, is entirely correct. I've only got about ten seconds left. So the last, well, in my last five seconds I guess I'll just ask the panel if there's any other questions that I can answer. Otherwise, we'll rest on our briefs and ask that the court affirm. Thanks very much. Thank you very much, Mr. Eldridge. Ms. Schneider, you've got two minutes. Thank you. In response to your question or comment, Judge Lee, Collins does specifically say, nothing in our case law, however, suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant. So the Supreme Court said, no, there's no support for that in our jurisprudence. And so I think it would be unfair to say, oh, the officers would have thought they had this authority. How many dissenters were there in Collins? I don't know offhand. There were dissenters. I believe there were two, actually. The point is, we're not talking about whether a judge would have erred in finding that the automobile exception allowed a search on curtilage. We're talking about what an officer would have known. And I understand your argument for which there's case support that they can't act or can't go and seek a good faith exception when they're acting contrary to known law. But I'm not sure that you've got any law that would have told officers on the street that the automobile exception did not give them authority within curtilage. I mean, the Supreme Court is only saying that there's no law supporting it. But they don't say there's law that alerted anybody to the fact that you couldn't do it. Well, I think this court's case law- I mean, obviously, if they were right that they could go on, there wouldn't have been any hearing at all. So they were wrong in terms of going on the curtilage. They were wrong in terms of going on the curtilage. And they were wrong in terms of searching the car, even if they could go on the curtilage, because there was no probable cause at that point. Well, that's a question I want to ask you. Did you, in your brief, argue that there was a lack of probable cause? No, I did not. No, so I'm not sure this issue was before us. Well, certainly the- In fact, I wasn't sure it was challenged at all below. Did I miss something? Certainly. So the lower court found no probable cause. And- I'm sorry, I'm losing my train of thought here. That the government lacked probable cause. It was never raised below that the government lacked probable cause when it went on to the curtilage and searched the car. Right. The argument was that- If the car had not been on curtilage, are you saying they didn't have probable cause to search? Exactly. That's exactly what I'm saying. And where is that argued? That is not argued. Okay. That is not argued. But any- If this court is conducting de novo review, which we believe it should, or even clear error review, I think you can't be blind to the fact that this was a search not only on curtilage, not only wrong for that reason, but also because at that point they had no probable cause. All right. Well, thank you both. We will reserve decision.